IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VISUAL INTERACTIVE PHONE CONCEPTS, INC., ) ) Plaintiff/Counterclaim-Defendant, ) ) v. ) ) UNITED STATES CELLULAR CORPORATION, ) ) ) Defendant/Counterclaim-Plaintiff. ) | Civil Action No. 1:11-cv-05289 Hon. Elaine E. Bucklo |

**PLAINTIFF VISUAL INTERACTIVE PHONE CONCEPTS, INC.'S MEMORANDUM
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Gerry Silver, Esq.
Andrew Solomon, Esq.
SULLIVAN & WORCESTER LLP
1633 Broadway, 32nd Floor
New York, NY 10019
(T) 212-660-3096
(F) 212-660-3001
gerry.silver@sandw.com
asolomon@sandw.com

Attorneys for Plaintiff Visual Interactive Phone Concepts, Inc.

Plaintiff Visual Interactive Phone Concepts, Inc. ("VIPC") submits this memorandum in opposition to the summary judgment motion of defendant U.S. Cellular Corporation ("U.S. Cellular"), an infringer of U.S. Patent Nos. 5,606,361 (the "'361 Patent") and 5,724,092 (the "'092 Patent") (the "Patents").

## PRELIMINARY STATEMENT

In an ill-fated attempt to show invalidity, U.S. Cellular takes an out-of-context sentence from a legal brief filed by VIPC in a different 2005 litigation to try to demonstrate a contradiction with the amended claims of the Patents. However, it is clear from the text that follows that sentence that no such contradiction exists. Further, as a matter of law, attorney argument in a brief cannot be used to invalidate the Patents.

By way of background, back in the pre-smartphone days of 1995, VIPC's President John Davidsohn ("Davidsohn") co-invented a system for using a "videophone" (read: smartphone) for securely viewing and purchasing goods or services over the internet using a credit card or similar payment method and receiving a confirmation or receipt back shortly thereafter (i.e., the "ecommerce" we take for granted today). The Patents were issued in 1997 and 1998, reexamined twice by the United States Patent and Trademark Office (the "USPTO") in 2010 and 2011-13 and allowed both times (the "First Reexamination" and the "Second Reexamination", respectively), with certain clarifying amendments described below.

One of the keys of the invention is and has always been a videophone as an integrated or "all-in-one" device with a built-in screen, phone, and computer capabilities. In the Patents and otherwise, Davidsohn and VIPC have always carefully and consistently distinguished the videophone from what was then (and even today) commonly referred to as a "personal computer" or "PC", namely a stand-alone desktop computer requiring separate components such as a monitor, hard drive and keyboard, and often requiring a separate telephone. A picture of

what is and was commonly understood to be a typical PC is below:

Personal Computer



(See, e.g., htttp:/www.wikipedia.org/wiki/Personal_computer).

U.S. Cellular relies exclusively on one sentence in a claim construction brief VIPC filed in a 2005 action (the "Virgin Mobile Action"; the "Virgin Mobile Brief"), which was never ruled upon. In that one sentence, VIPC proposes a definition for videophone that "excludes general purpose computers". However, U.S. Cellular ignores the sentences that follow, including the references to the Patents themselves, which make it abundantly clear that VIPC was simply distinguishing the videophone from a general purpose personal computer containing multiple components. Those sentences provide:

> A videophone, however, does not include a general-purpose personal computer. (See col. 27, lines 60-61 a "videophone" is "easier and faster to use and less expensive than a personal computer.") (VIPC Counterstatement of Facts ("CSOF"), filed herewith, at Ex. N pp. 3-4).

Thus, although after the Second Reexamination the Patent claims were amended to clarify that, as always intended, a videophone is "a single integrated device that includes a general purpose computer and a telephone," this was done merely to distinguish the videophone from a personal computer with multiple components. (CSOF Exs. E and F). Hence, when read in its entirety, the Virgin Mobile Brief is consistent with the Patents, as amended.

U.S. Cellular's motion should be denied because: (i) The Virgin Mobile Brief is consistent with and did not narrow the Patents; (ii) U.S. Cellular does not even come close to meeting its burden of proving by clear and convincing evidence that VIPC unequivocally disavowed the amended claims; (iii) U.S. Cellular cites no legal precedent for using attorney

2

argument to invalidate the Patents; (iv) the amendment did not enlarge the scope; and (v) U.S. Cellular fails to meet its summary judgment burden (see Point I (A)-(F), infra). Further, U.S. Cellular's argument that the Patents should not be enforced prior to the Second Reexamination fails because, inter alia, it is premature (see Point II, infra).

## BACKGROUND

A.  **The Patents Distinguish "Videophone" From A Personal Computer.**

Back in 1995, Davidsohn co-invented a system for allowing a consumer or other person to utilize a "videophone" (today commonly referred to as a "smartphone") to securely view and purchase goods and services over the internet. Davidsohn is now President of VIPC which owns the Patents covering this system. The USPTO, after issuing the Patents in 1997 and 1998, respectively, re-examined the Patents twice -- once after the First Reexamination (not relevant here) in 2010 and again after the Second Reexamination in 2011-2013 -- and allowed the Patents with certain amendments discussed herein. (See generally CSOF Exs. A-F).

The Patents are each titled "videophone interactive mailbox facility system and method of processing information", and make it clear that the videophone is an integrated device with computer and telephone capabilities, as opposed to a "personal computer" or "PC" (i.e., a stand-alone, desktop personal computer consisting of a number of components, such as a monitor, keyboard and hard drive or laptop, and a separate telephone) (CSOF Exs. A and B). The specifications describe the videophone as "any device having the capabilities to receive video/voice and/or video/text as its primary function and which, in the future, may have additional capabilities added to it that will enable it to perform functions that a PC computer performs today. Further a videophone is defined to include cellular videophones or wireless videophones or all videophones integrated with additional PC technologies and similar capabilities." (See Ex. A col. 10 1. 32-40; Ex. B col. 14-15 (emphasis added)). The

3

specifications state that "the primary object of the present invention is to provide a videophone interactive mailbox facility system that allows the user to view products and services on a videophone that is <u>easier</u> <u>and</u> <u>faster</u> <u>to</u> <u>use,</u> <u>less</u> <u>expensive</u> <u>than</u> <u>a</u> <u>personal</u> <u>computer,</u> <u>and</u> <u>also</u> <u>more</u> <u>user</u> <u>friendly</u> <u>than</u> <u>a</u> <u>personal</u> <u>computer</u>" (Exs. A and B col. 2 1. 28-33 (emphasis added)). The claim (after the First Reexamination) provides, in relevant part:

1. A videophone interactive mailbox facility system including a central data center for processing of information to conduct a transaction, comprising:

(a) A user station having a videophone for viewing transaction information and video sent or received to conduct a transaction; and means for inputting said transaction information into said videophone; said videophone including a video screen, a <u>memory</u> <u>chip</u> for storing said transaction information and an <u>interface</u> <u>chip</u> for interfacing with said central data center (CSOF Ex. D col. 1 1. 20-31) emphasis added)).

**B.      The Second Reexamination Clarifies But Does Not Broaden Scope.**

In 2011, VIPC commenced this action. On or about December 15, 2011, Muir Patent Consulting, LLC ("Muir") requested reexamination of the Patents. One of Muir's arguments was that prior art existed involving a personal or desktop computer. (CSOF Ex. G). The USPTO granted reexamination.

In its Response to the Office Action dated July 12, 2012, VIPC argued that none of the prior art disclosed the videophone element claimed in the Patents. In particular, VIPC distinguished the prior art because, <u>inter</u> <u>alia</u>, the videophone as described in the Patents constituted an "integrated device that includes a telephone, a keypad, a camera, a display screen, and additional PC technologies", while the prior art, among other differences, requires the presence of "separate components" (<u>see</u> CSOF Ex. H pp. 4-5).

The Examiner acknowledged that although the specifications of the Patents may describe a single integrated device, the USPTO is required to use the "broadest reinterpretation rule" (CSOF Ex. I p. 4), and found that therefore the Patents left open a possibility that it could

4

include, without any limiting language, a collection of devices, such as a PC:

> The disclosed configuration of components of the user station videophone [as a single integrated device] are but a <u>single example</u> of a videophone. The term 'videophone' is interpreted <u>more broadly</u> than the embodiment illustrated in Figure 1 of the '361 Patent. ((CSOF Ex. I p. 9, emphasis added)).

At a meeting on August 29, 2012, VIPC and the Examiner came to a tentative understanding of conditions for allowance of the claims. VIPC would amend the claims to clarify the description of videophone as defined in the Patents by adding to each independent claim that a videophone is "an integrated device that 'includes a general purpose computer and telephone", so as to "confirm that a traditional desktop computer with a modular keyboard, modular monitor, etc. is not an integrated videophone claimed by [VIPC]." (CSOF Ex. J p. 2).

The Examiner viewed the proposed amendment as a limitation, noting the discussions regarding whether the Patents" "should be limited" to require inclusion of a phone and it being a "single integrated device". The Examiner noted that the potential amendment would "distinguish[ ] [it] from the prior art by the fact that it comprised a single integrated device (the videophone), while prior art implementations instead utilized a personal computer." (CSOF Ex. K (continuation sheet)). Thus, VIPC proposed amending the claims:

> The 'videophone' element as claimed by the Applicants is not a collection of devices capable of communicating with each other, to the contrary, the 'videophone' as claimed by the Applicants is a **single integrated device that includes a general purpose computer and a telephone** . . . . A traditional desk top computer in 1995 was not an integrated device that included the capability of making telephone calls. (CSOF Ex. L pp. 8-9).

As a result, the USPTO allowed the amendment holding:

> In particular, the Patent Owner's argument that the prior art of record fails to include a videophone that is a single integrated device (particularly in light of the amendment to independent claim 1, specifying that the claimed videophone is 'a single integrated device that includes a general purpose computer and a telephone') is found to be persuasive. (CSOF Ex. M p. 2).

Thus, in the Second Reexamination, the Patents were amended as follows:

5

1. A videophone interactive mailbox facility system including a central data center for processing of information to conduct a transaction, comprising:

(a) A user station having a videophone for viewing transaction information and video sent or received to conduct a transaction; and means for inputting said transaction information into said videophone; said videophone including a video screen, a memory chip for storing said transaction information and an interface chip for interfacing with said central data center; *wherein said videophone is a single integrated device that includes a general purpose computer and a telephone.* (CSOF Ex. F col. 1 1. 20-32; see also Ex. E, col. 1 1. 20-31).

### C. U.S. Cellular's Motion Is Based On Taking One Sentence Of A Legal Brief Out Of Context.

On summary judgment, U.S. Cellular relies exclusively on a claim construction or "Markman" brief submitted by VIPC's prior attorney in the Virgin Mobile Action filed in 2005. The Markman hearing was never held and the claim construction never ruled upon for reasons not relevant here (see U.S. Cellular Brief at p. 4 and n. 2).

U.S. Cellular relies solely upon a sentence in the section of the Virgin Mobile Brief proposing a claim construction for the term "videophone". US Cellular only refers to the first sentence in the first paragraph of that section and purposefully ignores the second paragraph, as that second paragraph completely undercuts its argument. The full section provides as follow:

"Videophone" should be construed as

**a device with the capability of receiving and viewing videophone messages that includes a cellular and wireless videophone and excludes general-purpose computers and wherein videophone messages include moving images, still images, text and/or voice:**

Plaintiff's construction of the term "videophone" is supported by the specification. The specification defines a "videophone" to include "any device having the capabilities to receive video/voice and/or video/text as its primary function" which includes "cellular videophones or wireless videophones." (See [CSOF Ex. B] col. 14, lines 61-67)  A videophone, however, does not include a general-purpose personal computer. (See [CSOF Ex. B] col. 27, lines 60-61 a "videophone" is "easier and faster to use and less expensive than a personal computer.") (CSOF Ex. N pp. 3-4 (bold in original; underline added)).

U.S. Cellular argues that the phrase "and excludes general purpose computers" in the first paragraph limited the claims in the Patents as they existed at the time, and is inconsistent with

6

the amended claim following the Second Reexamination providing that the videophone "is a single integrated device that includes a general purpose computer and a telephone."

However, in doing so, U.S. Cellular ignores the second paragraph quoted above, which makes it clear that VIPC was simply stating in the Virgin Mobile Brief, as it does in the Patent specifications, that a videophone does not include a stand-alone _personal_ computer. That second paragraph provides, in relevant part: "Plaintiff's construction of the term 'videophone' is supported by specification . . . . A videophone, however, does not include a general-purpose _personal_ computer (See [CSOF Ex. B] col. 27, lines 60-61 a 'videophone' is 'easier and faster to use and less expensive than a _personal_ computer'") (CSOF Ex. N p. 4 (emphasis added)).

Reading the entire paragraph in context, it is clear that the phrase "excluding general-purpose computers" in the first sentence of the quoted section of the Virgin Mobile Brief excludes "general purpose _personal_ computers" (emphasis added), namely the class of stand-alone computers with a monitor, hard drive and keyboard, or a laptop, with a separate telephone, as the videophone is not a personal computer but rather an integrated device containing built-in phone, video and computer capabilities. Hence, the Virgin Mobile Brief did not narrow the scope of the Patents and is not in contradiction with the Amended Claims of the Patents, but is consistent therewith. This is further supported by Co-Inventor Davidsohn's deposition testimony in the Virgin Mobile Action given prior to filing of the Virgin Mobile Brief:

Q: Would you agree to the statement the videophone is in effect a mini computer; it's just a simple computer? Would you agree to that statement in reference to your videophones?

A: A simple computer?

Q: Correct.

A: That it's simplified. It's a PC. It's a - - it has a PC chip in it, and it acts like a PC; but it's easier. It's handheld. You can take it anywhere you want. It's accessible. And you could, you know - - you could have it at your - - wherever you go.

7

It's not like a laptop, and it's not like the drive all of a sudden it doesn't - - it stops working. There is not many moving parts in it.

The fact is that the videophone is very handy, very easy to use. (CSOF Ex. O. Tr. 206).

## ARGUMENT

"The moving party for summary judgment has the burden of demonstrating that there is no genuine issue as to any material fact." Canady v. Erbe Elektromedizin GmbH, 20 F. Supp. 2d 54, 61 (Dist. Col. 1998); Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–32, 106 S. Ct. 2548 (1986). "The evidence presented by the non-moving party is to be believed, and all justifiable inferences are to be drawn in the non-moving party's favor." Canady, 20 F. Supp. 2d at 61; Celotex, 477 U.S. at 325, 106 S. Ct. 2548. Further, on summary judgment and otherwise, "[a]n issued patent is presumed valid." Canady, 20 F. Supp. 2d at 61; see 35 U.S.C. § 282. "To overcome this presumption, a challenger of an issued patent bears a heavy burden of showing invalidity by clear and convincing evidence." Canady, 20 F. Supp. 2d at 61; Checkpoint Sys., Inc. v. United States Int'l Trade Comm'n, 54 F.3d 756 (Fed. Cir.1995). "The court may grant a motion for summary judgment on invalidity [only] if the challenger supports its claims of invalidity by indisputable facts and law." Canady, 20 F. Supp. 2d at 61.

**I. U.S. CELLULAR'S SUMMARY JUDGMENT MOTION CLAIMING INVALIDITY SHOULD BE DENIED.**

**A. Legal Standards: A Legal Brief Cannot Be Used to Vary The Patents.**

As set forth in the Vitronics case relied upon by U.S. Cellular (U.S. Cellular Br. at p. 7), "[i]t is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). "First, we look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention," which "are generally given their

8

ordinary and customary meaning." <u>Vitronics</u>, 90 F. 3d at 1582.

"[S]econd . . . [a]s we have repeatedly stated, '[c]laims must be read in view of the specification, of which they are a part.'" <u>Vitronics</u>, 90 F. 3d at 1382 (quoting <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), <u>aff'd</u>, 517 U.S. 370 (1996)). "Third, the court may also consider the prosecution history of the patent, if in evidence." <u>Vitronics</u>, 90 F. 3d at 1582.

Only if the intrinsic evidence is insufficient may courts look to extrinsic evidence "external to the patent and file history, such as expert testimony [and] inventor testimony." <u>Vitronics</u>, 90 F. 3d at 1583-94. "However, as we have recently re-emphasized, extrinsic evidence in general and expert testimony, in particular, may be used only to help the court come to the proper understanding of the claims; <u>it may not be used to vary or contradict the claim</u>." <u>Vitronics</u>, 90 F. 3d at 1584 (emphasis added); <u>Markman</u>, 52 F. 3d at 981. "<u>Nor may it contradict the import of other parts of the specification</u>." <u>Vitronics</u>, 90 F. 3d at 1584 (emphasis added).

"Nor may the inventor's subjective intent as to claim scope, when unexpressed in the patent documents, have any effect." <u>Vitronics</u>, 90 F. 3d at 1584-85 (reversing district court when "[u]nfortunately, here the trial judge did use the extrinsic evidence to vary or contradict the manifest meaning of the claims)." As set forth in a case relied upon by U.S. Cellular (U.S. Cellular Br. p. 8), courts "indulge a 'heavy presumption' that claim terms carry their full ordinary and customary meaning, unless the patentee unequivocally imparted a novel meaning to those terms or expressly relinquished claim scope during prosecution." <u>Omega Eng'g, Inc. v. Raytek Corp.</u>, 334 F. 3d 1314, 1223 (Fed Cir 2003) (internal citations omitted) (patentee's "prosecution disclaimer is more circumscribed than [defendant] asserts").

Courts "decline[] to apply the doctrine of prosecution disclaimer where the alleged

9

disavowal of claim scope is ambiguous." Omega, 334 F.3d at 1324. Courts consistently "require[] the alleged disavowing statements to be so clear as to show reasonable clarity and deliberateness." Omega, 334 F.3d at 1325, 1327 ("no support in the specification or prosecution history for the district court's negative limitation [absent] patentee's clear and unmistakable disclaimer"). "Consequently, for prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both <u>clear and unmistakable</u>." Omega, 334 F.3d at 1325–26 (emphasis added) ("same standard [as] estoppel").

**B.    <u>The Virgin Mobile Brief Is Consistent With The Patents.</u>**

In its motion, U.S. Cellular argues that VIPC's Virgin Mobile Brief limited the scope of the Patents. This argument fails because the relevant section of the Virgin Mobile Brief, read in its entirety, is consistent with the Patent claims and specifications, and does not contradict them. As set forth above, the Patents, even before the amendment following the Second Reexamination, provide that a videophone is a device that is integrated with video, phone and computer capabilities but is distinct from a personal computer.

<u>First</u>, Claim 1 provides that "a videophone [is] for viewing transaction information and video sent or received to conduct a transaction; and means for inputting said transaction information into said videophone; said videophone including a video screen, a <u>memory chip</u> for <u>storing</u> said transaction information and an <u>interface chip</u> for interfacing with said central data center" (CSOF Ex. F col. 1 l. 23-31 (emphasis added)). <u>Second</u>, the claim must be read in light of the specifications, which describe the videophone as having computer capabilities but expressly distinguishes the videophone from a personal computer. The videophone is described as "any device having the capabilities to receive video/voice and/or video/text as its primary function and which, in the future, <u>may have additional capabilities added to it that will enable it to perform functions that a PC computer performs today</u>. Further, a videophone is defined to

10

include cellular videophones or wireless videophones or all videophones <u>integrated</u> <u>with</u> <u>additional</u> <u>PC</u> <u>technologies</u> <u>and</u> <u>similar</u> <u>capabilities</u> (see CSOF Ex. A col. 10 1. 32-40; Ex. B col. 14 - col. 15 (emphasis added)), but that "the primary object of the present invention is . . . a videophone <u>that</u> <u>is</u> <u>easier</u> <u>and</u> <u>faster</u> <u>to</u> <u>use,</u> <u>less</u> <u>expensive</u> <u>than</u> <u>a</u> <u>personal</u> <u>computer,</u> <u>and</u> <u>also</u> <u>more</u> <u>user</u> <u>friendly</u> <u>than</u> <u>a</u> <u>personal</u> <u>computer</u>" (CSOF Exs. A and B col. 2 1. 28-33 (emphasis added)).

U.S. Cellular argues that the phrase "and excludes general purpose computers" in the first paragraph of the subject section of the Virgin Mobile Brief limited the claims in the Patents, and is therefore inconsistent with the Amended Claim of the Second Reexamination providing that the videophone "is a single integrated device that includes a general purpose computer and a telephone" (CSOF Exs. E and F). Therefore, U.S. Cellular argues, the amended claims enlarged the scope of the claim and therefore the Patents are invalid under 35 U.S.C. § 305.

However, U.S. Cellular ignores not only the intrinsic evidence of the Patents, but the second paragraph of the subject section of the Virgin Mobile Brief, which makes it clear that VIPC was simply stating that a videophone does not include the class of stand-alone <u>personal</u> computers. That second paragraph provides, in relevant part, "Plaintiff's construction of the term 'videophone' is supported by specification . . . . A videophone, however, does not include a general-purpose <u>personal</u> computer (<u>See</u> Col. 27, lines 60-61 a 'videophone' is 'easier and faster to use and less expensive than a <u>personal</u> computer'") (CSOF Ex. N pp. 3-4 (emphasis added)).

Reading the entire subject section of the Virgin Mobile Brief in context, in conjunction with the Patents' claims, specifications and prosecution history, it is clear that VIPC merely excluded the class of personal computers, namely stand-alone computers with a monitor, hard drive, keyboard and a separate telephone, because the videophone is <u>not</u> a personal computer but

rather an integrated device containing, among other things, computer capabilities, a video screen, and a phone. This is also consistent with Co-Inventor Davidsohn's deposition testimony in the Virgin Mobile Action (see pp. 7-8, supra, CSOF Ex. O Tr. 206).

Hence, the Virgin Mobile Brief did not in fact narrow the Patents and is not in contradiction with the amended claims of the Patents, and therefore U.S. Cellular's motion fails. (See, e.g., Vitronics, 90 F.3d at 1582 (claims must be read in light of the specification, and extrinsic evidence may not be used to contradict the claims or import of the specifications)).

### C. U.S. Cellular Has Not Shown A Clear And Unmistakable Disclaimer.

U.S. Cellular must clearly and convincingly establish that VIPC unmistakably and unambiguously disclaimed in the Virgin Mobile Brief a videophone as "a single integrated device that includes a general purpose computer capabilities and a telephone". For the reasons set forth above, it clearly has not done so (indeed, the Virgin Mobile Brief is consistent with that amendment). See, e.g., Omega, 334 F.3d at 1325–26 ("[c]onsequently, for prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable", ruling no disclaimer); N. Telecom Ltd. v. Samsung Elects. Co., 215 F.3d 1281, 1294–95 (Fed. Cir. 2000) (declining to apply doctrine because the infringer had not shown "that the patentees -- with reasonable clarity, and deliberateness -- defined 'plasma etching' as excluding ion bombardment"); Storage Tech. Corp. v. Cisco Sys. Inc., 329 F.3d 823, 833 Fed. Cir. 2003) ("[w]e therefore do not consider the applicant's statement to be a clear and unambiguous disavowal of claim scope"; Invitrogen Corp. v. Biocrest Mfg., L.P., 327 F.3d 1364, 1369 (Fed. Cir. 2003) ("[t]he prosecution history does not show any clear and unambiguous disavowal").

D.  **U.S. Cellular's Motion Also Fails Because It Cites No Legal Precedent That A Court May Use A Legal Brief To Limit Patent Scope.**

None of the cases cited by U.S. Cellular support its argument that the court may rely on attorney argument in a legal brief to hold that the patentee disclaimed, disavowed or limited patent scope; rather, those cases undercut it. See Vitronics, 90 F.3d at 1583 (as U.S. Cellular concedes, court defines the "public record" as only the claims, specifications and prosecution history; courts should not "use the extrinsic evidence to vary or contradict the manifest meaning of the claims"); Markman, 52 F.3d at 976 (extrinsic evidence is "not for the purpose of varying or contradicting the terms of the claims" and the "trial court properly rejected extrinsic evidence [of expert testimony] to the extent it contradicted" the Patents); Phillips Petroleum Co. v. Huntsman Polymers Corp., 157 F.3d 866, 872 n.12 (Fed. Cir. 1998) (relying on "interference proceedings", which are part of the prosecution history, not extrinsic evidence); see also SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1341–42 (Fed. Cir. 2001) (only looking at specifications to support disclaimer, not extrinsic evidence); Omega, 334 F.3d at 1324 (only looking at prosecution history, not extrinsic evidence, finding that alleged disclaimer not clear and unmistakable, and reversing summary judgment).

E.  **The Amendment Following The Second Reexamination Did Not Enlarge The Scope And Therefore U.S. Cellular's § 305 Argument Fails.**

In attempting to demonstrate invalidity, U.S. Cellular is relying on 35 U.S.C. § 305, which provides that "[n]o proposed amended or new claim enlarging the scope of a claim of the patent will be permitted." Here, regardless of whether the amendment was merely a clarification, as VIPC contends, or a limitation, as the Examiner contended, scope was not expanded because the claims were amended to state that the Patents apply only to an "integrated videophone with a general purpose computer and phone". (CSOF Ex. K (claims "should be limited" by requiring inclusion of a phone and it being a "single integrated device")).

13

F.  **U.S. Cellular Fails To Meet Its Summary Judgment Burden.**

For the reasons set forth above, drawing all inferences in VIPC's favor, U.S. Cellular has clearly failed to meet its heavy burden of showing invalidity by clear and convincing evidence, with indisputable facts and law. See p. 8, supra. At the very least, there is an issue of fact as to the meaning of Virgin Mobile Brief and the Patents.

II. **U.S. CELLULAR'S ARGUMENT THAT VIPC CANNOT ENFORCE ITS PATENTS BEFORE REEXAMINATION FAILS.**

U.S. Cellular seeks to bar VIPC from enforcing its Patents prior to the Second Reexamination. The motion should be denied as premature until after the Court has definitively construed the claims in the Patents.

To prevail on summary judgment, U.S. Cellular must establish that VIPC's amendment in the reexamination effected a substantive change to the original claims. Laitram Corp. v. NEC Corp., 952 F.2d 1357, 1363 (Fed. Cir. 1991). But that is not established merely because VIPC made the amendment to overcome prior art cited by the Examiner during the reexamination proceeding. This point is the holding in Laitram, where the Federal Circuit held:

> When claims are amended during reexamination following a rejection based on prior art, the claims are not deemed substantively changed as a matter of law. There is no *per se* rule.

Id. at 1363. The Court's task is to "analyze the claims of the original and reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." Id. at 1363.

That the patent examiner viewed the amendment to be necessary to exclude prior art is relevant, but not controlling because the standards of review in the USPTO and here are different. During reexamination, the examiner is required to give the "broadest reasonable interpretation" of claim terms consistent with the specification." (CSOF Ex. I pp. 7, 4). By contrast, in an infringement suit, the Court is to ascertain the "correct" interpretation, not the

14

---

"broadest." See Flo Healthcare Solutions, LLC v. Kappos, 697 F.3d 1367, 1379 (Fed. Cir. 2012); Alien Tech. Corp. v. Intermec, Inc., 2010 WL 5174482, at *4 (D.N.D. Dec. 15, 2010). Here, VIPC contends, as it maintained in the Second Reexamination, that "videophone" always was limited to "a single integrated device that includes a general purpose computer and a telephone", not a multi-component PC, and therefore the amendment is merely a clarification. VIPC is entitled to a claim construction hearing on this issue of fact.

Thus, the motion is premature. See, e.g., Etagz, Inc. v. Quiksilver, Inc., 2012 WL 2135497 (C.D. Cal. June 11, 2012) (court denied summary judgment motion as "premature," noting that "[n]umerous courts have held that the inquiry of whether two claims are identical should not occur until after formal claim construction. This Court agrees"); Sorensen v. Emerson Elec. Co., 2011 WL 6752559, at *6 (S.D. Cal. Dec. 22, 2011) ("process for determining whether there is a substantive change between the pre- and post-reexamination versions of a patent claim requires the Court to perform the same type of analysis as when resolving a typical claim construction dispute"). In other contexts, courts have similarly deferred ruling on summary judgment until after claim construction. Cf. Intellect Wireless, Inc. v. T-Mobile USA, Inc., 735 F. Supp. 2d 928, 932–33 (N.D. Ill. 2010) (summary judgment premature on infringement until after claim construction). After the terms in the Patents are construed, the question of whether the amendment resulted in a substantive change or was just a mere clarification, see, e.g., Predicate Logic, Inc. v. Distributive Software, Inc., 544 F.3d 1298, 1304 (Fed. Cir. 2008) (denying summary judgment on question of whether amendment constituted substantive change); Laitram, 952 F.2d at 1363–64 (same), will be answered. Now is not the time.

## CONCLUSION

For the reasons set forth hereunder, U.S. Cellular's motion for summary judgment dismissal of this action should be denied.

Dated: January 10, 2014 

Respectfully submitted,

SULLIVAN & WORCESTER LLP

By: /s/ Gerry Silver
  Gerry Silver, Esq.
  Andrew Solomon, Esq.
  1633 Broadway, 32nd Floor
  New York, NY 10019
  (T) 212-660-3096
  (F) 212-660-3001
  gerry.silver@sandw.com
  asolomon@sandw.com

Attorneys for Plaintiff Visual Interactive Phone Concepts, Inc.