IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VISUAL INTERACTIVE PHONE
CONCEPTS, INC.,

    Plaintiff-Counterclaim-Defendant,

v.

UNITED STATES CELLULAR
CORPORATION,

    Defendant-Counterclaim-Plaintiff,

No. 11 C 5289

**OPINION AND ORDER**

Defendant United States Cellular Corporation ("UCC") has moved for judgment on the pleadings, Fed. R. Civ. P. 12(c), contending that the patent at issue, owned by plaintiff Visual Interactive Phone Concepts, Inc. ("VIPC"), does not claim patentable subject matter within the meaning of 35 U.S.C. § 101. A motion for judgment on the pleadings is considered pursuant to the same standard as applies to a Rule 12(b)(6) motion to dismiss. The allegations are to be viewed in a light most favorable to the non-moving party. The pleadings and the public record are considered. The Federal Circuit adopts the standard applied by the local Circuit. ***Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC***,

635 F. App'x. 914, 917 (Fed. Cir. 2015); *Buchanan-Moore v. Cy. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

The parties have completed discovery. The court has considered UCC's motion for summary judgment on the ground that VIPC violated 35 U.S.A.§ 305 by enlarging its patent claims during reexamination proceedings. The motion was denied as premature before construction proceedings. *VIPC v. UCC*, 2014 WL 561731 (N.D. Ill.) (**"*VIPC I*"**). Thereafter, UCC's motion to strike VIPC's final infringement contentions was granted in part and plaintiff was given leave to amend. (Dkt. 150). UCC contends that the amendment is inadequate.

Construction proceedings have been completed. An order has issued construing certain claim terms of U.S. Patent No. 5,724,092 ("the '092 patent") entitled "Videophone Interactive Mailbox Facility System and Method of Processing Information." *VIPC v. UCC*, 2016 WL 4265750 (N.D. Ill.) (**"*VIPC II*"**).

The '092 patent has been reexamined and amended. Infringement of Claims 1 and 3 is alleged. As amended, Claims 1 and 3 provide as follows:

> 1. A videophone interactive mailbox facility system including a central data center for processing of information to conduct a transaction, comprising:

a) a user station having a videophone for viewing transaction *information and video*[1] sent or received to conduct a transaction; and means for inputting said transaction information into said videophone; said videophone including *a video screen,*[1] a memory chip for storing said transaction information and an interface chip for interfacing with said central data center; *wherein said videophone is a single integrated device that includes a general purpose computer and a telephone;*[2] and

b) said central data center electronically connected to said user station including a computer processor *connected to a video storage center*[1] for centralized transmitting, receipt of and storage of said transaction information and vendor-type *video product and service*[1] information with said user station; database storage components for receiving and storing said transaction information sent from said user station; and a network interface for electronically connecting and making said computer processor compatible with said user station.

* * *

3. A videophone interactive mailbox facility system including a central data center for processing information, comprising:

a) a user station having a videophone for viewing information sent or received; and means for inputting said information into said videophone; *wherein said videophone is a single integrated device that includes a general purpose computer and a telephone;*[2] and

---

[1]Language added as a result of Ex Parte Reexamination Certificate issued in 2010.
[2]Language added as a result of Ex Parte Reexamination Certificate issued in 2013.

> b) said central data center electronically connected to said user station and including a computer processor *connected to a video storage center*[1] for centralized transmitting, receipt of and storage of *said information and vendor-type video product and service information*[1] with said user station; database storage components for receiving and storing said information sent from said user station; and a network interface for electronically connecting and making said computer processor compatible with said user station.

The initial difference between Claim 1 and Claim 3 of the '092 patent was that, in Claim .1 "the user station" "videophone" was claimed to include a "memory chip for storing said transaction information and an interface chip for interfacing with said central data center." During reexaminations the Claims were amended. In Claim 1, "user station" was amended to add the words "information and video," and "video screen." The words "wherein said videophone is a single integrated device that includes a general purpose computer and a telephone" were added to both Claim 1 and Claim 3. The words "connected to a video storage center" and "video product and service" were added to the "central data center" claim in Claim 1. The words "connected to a video storage center" and "said information and vendor-type video product and service information" were added to the "central data center" claim in Claim 3.

The Field of the Invention is described as follows:

> This invention relates to a videophone interactive mailbox facility system wherein the system has a videophone, a printer, a computer, and a central data center for processing information from a plurality of stations for purchasers and sellers.

Col. 1:9-13.

The Patent Overview states:

> Accordingly, the primary innovative feature of the present invention is that it provides for a videophone interactive mailbox facility system that allows the user to view products and services; review letters, bills and payments for services/products which can be viewed on the videophone screen, such that the user can review the pertinent information and immediately decide if it is correct and then transmit the appropriate letter, bill, and/or payment for services or products.

Col. 5:47-54.

A two-stage framework for determining whether a particular patent claim is directed to patentable subject matter is set forth in two decisions of the Supreme Court. *See* ***Mayo Collaborative Servs. v. Prometheus Labs., Inc.***, 132 S. Ct. 1289 (2012), ***Alice Corp. Pty. Ltd. v. CLS Bank Int'l***, 134 S. Ct. 2347 (2014). The Federal Circuit has applied this framework in a number of recent cases. *See* ***Affinity Labs of Tex., LLC v. DirectTV, LLC***, ___ F.3d ___, 2016 WL 5335501 (Fed. Cir. Sept. 23, 2016); ***Affinity Labs of Tex., LLC v. Amazon.com Inc.***, ___ F.3d ___, 2016 WL 5335502 (Fed. Cir. Sept. 23, 2016); ***Electric Power Group,***

*LLC v. Alstom S. A.,* 830 F.3d 1350 (Fed. Cir. 2016); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016). It is necessary to determine (1) whether a claim is directed to a patent ineligible concept--a law of nature, a natural phenomenon or an abstract idea, and if so, (2) whether the elements of the claim, considered both individually and as an ordered combination, add enough to transform the nature of the claim into a patent-eligible combination. The two stages are referred to as the "abstract idea" step and the "inventive concept" step. The "abstract idea" step requires focus on the claimed advance over prior art to determine if the claim's character as a whole is directed to excluded subject matter. The "inventive concept" step requires an examination to determine whether the claims reveal an inventive application of the subject matter that removes the claim from the realm of abstract ideas. In each step, the court must avoid oversimplification. *Alstom*, 830 F.3d at 1353; *TLI*, 823 F.3d at 611-12; *Enfish*, 822 F.3d at 1334-35; *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1375-76 (Fed. Cir. 2016), *cert. denied*, __ S. Ct. __, 2016 WL 4247339 (Oct. 3, 2016).

### A.

The '092 patent has two main components: a user station having a videophone and an electronically connected central data center. The videophone

is an integrated device that includes a telephone, general purpose computer, a video screen, a memory chip, an interface chip, encoders, and means for inputting transaction information.

The Background of the Invention states "[t]here are many known audio and video presentation interactive network systems where a subscriber can buy products and/or services with the aid of the subscriber's telephone and cable television system." The Background further states:

> The problems inherent with the above audio/video interactive network systems are that the subscriber's interaction with the cable television system or computer system is limited mainly to the subscribers's one-way input of data to the interactive system by phone or personal computer. These systems do not provide for an immediate confirmation of an order and do not provide proper security to the transactions carried out.

Col. 1:18-21, 35-42.

An overview diagram of a proposed interactive facility is as follows:



FIG. 1

The broad general definition of a "videophone" in the patent and the prior art indicates that the thrust of the patent is the interactive mailbox facility system, not the videophone itself. The videophone is defined to include existing and "any"

future capabilities of cellular or wireless videophones and related equipment. The '092 Patent defines the videophone as follows:

> The present invention defines a videophone to be any device having the capabilities to receive video/voice and/or video/text as its primary function and which, in the future, may have additional capabilities added to it that will enable it to perform functions that a PC computer performs today. Further, a videophone is defined to include cellular videophones or wireless videophones or all videophones integrated with additional PC technologies and similar capabilities (disk storage, CDs, diskettes, and memory in the megabyte range and up and/or keyboards). Any videophone that receives any kind of electronic video/voice and/or video/text or any form of video for viewing by the client and is stored on a computer facility which generates any form of video and in which the party on the videophone is not utilizing his videophone to converse and see the other calling party or parties he called in real time (both sides physically there) is also defined to be a videophone of the present invention.

Col. 14:61-15:11

The videophone is also claimed as including a "video screen," a "memory chip" and an "interface chip," items commonly found in computer-based systems. VIPC amended its claims during reexamination proceedings to specify that the videophone includes a "general purpose computer and a telephone." The '092 Patent Description of the Prior Art describes video entertainment and data-management system that employs a "terminal having a video LCD display screen at the customer location, a video tape player, a telephone, headphones, and a digital

9

ROM processor." Col. 2:9-17. The claimed videophone consists of, and is operated by, commonly known devices. A review of the prior art supports that the focus of the Claims is the interactive system, not the tangible components .

Also, the term "means for inputting said transaction information into said videophone" has been construed without objection to mean conventional items: a "touch pad" the "touch panel on the LCD screen," "pushbuttons," and "keyboards." *VIPC II*, 2016 WL 4265750 at *2, 4.

The videophone, as claimed in the '092 patent, is based on the knowledge of one skilled in the art to select the claimed videophone based on pre-existing or future technology, not on technical data provided by the '092 patent. The focus of Claims 1 and 3 is not on the videophone, but rather on the commercial practice or idea of conducting transactions using generic telephone and computer components and centralized data storage.

The "central data center" is claimed to include a "computer processor connected to a video storage center," "database storage components," and "a network interface" for connecting the central data center to other computers and devices. These are items of known general use.

All of the tangible components found in the claims are conventional or found in prior art. The functional character of the claim language is result-focused. The

Claims recite the abstract idea of storing and transmitting information, and name conventional components to achieve those results. The focus of the '092 patent is on a well-know abstract idea.

Plaintiff argues that the inclusion of tangible components, alone, saves the patent from being abstract. The Federal Circuit has found, however, a number of claims involving tangible components to be abstract. In *TLI*, 823 F.3d at 610-611, the tangible components included a "server" and a "telephone unit." The court found the claims abstract saying that "the specification makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea." The *TLI* telephone had features similar to the videophone in the '092 patent.

In *Alstom*, 830 F.3d at 1351-52, the claims included a system claim that required tangible components including an "interconnected electric power grid," and interfaces for "receiving a plurality of data streams," "data from other power system data sources," and "data from a plurality of non-grid data sources." The court stated that "the claims' invocation of computers, networks, and displays does not transform the claimed subject matter into patent-eligible applications. The claims at issue do not require any nonconventional computer, network, or display components, or even a 'non-conventional and non-generic arrangement of known,

11

conventional pieces,' but merely call for performance of the claimed information collection, analysis, and display functions 'on a set of generic computer components' and display devices." *Id.* at 1355 (quoting ***Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC***, 827 F.3d 1341, 1349-52 (Fed. Cir. 2016)). The court held the claims to be abstract stating:

> Though lengthy and numerous, the claims do not go beyond requiring the collection, analysis, and display of available information in a particular field, stating those functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology. The claims, defining a desirable information-based result and not limited to inventive means of achieving the result, fail under § 101.

*Alstom*, 830 F.3d at 1351.

More recently the same conclusion was reached in the ***DirectTV*** case. There the patent contained two independent claims, one a system claim and the other a method claim. The claims were directed to streaming regional broadcast signals to cellular telephones located outside the region served by a regional broadcaster. The court again stated that, in cases involving the conveyance and manipulation of information using wireless communication and technology involving tangible components, use of a conventional arrangement of components is insufficient

absent additional features constituting an inventive concept. *Id.*, 2016 WL 5335501 at*7-10.

On the same day the Federal Circuit decided the *DirectTV* case, it also decided the *Amazon.com* case. There the patent was described as directed to a "system" and " method for targeted advertising" for delivery to a user of a portable device based on demographic information about the user. 2016 WL 5335502 at *1. The court stated that "the claims do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem. The purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Id.* at *3. The similarities of the '092 claims are clear.

A comparison of the '092 patent claims with prior art reveals that the claims focus on the functionality of conducting a transaction and disclose no more than the abstract idea of conducting transactions using conventional computer components, a telephone and centralized data storage.

**B.**

The second step of *Mayo/Alice* requires a review of the claims of the '092 patent to determine the existence of a "concrete implementation of the abstract idea in the form of an 'inventive concept.'" *Id.* at *4 (citing *Alice*, 134 S. Ct. at 2355;

13

*Mayo*, 132 S. Ct. at 1294). VIPC contends that the '092 patent videophone is a new hardware invention, citing *Enfish*, supra, and ***DDR Holdings, LLC v. Hotels.com, L.P.***, 773 F.3d 1245 (Fed., Cir. 2014). However, in both cases the patents were directed at overcoming problems in computer technology arising in the realm of internet networks. VIPC's claims relate to performing commercial transactions using conventional equipment.

VIPC relies on the Patent Office's allowance of the claims in reexamination after the addition to the claims of the words "wherein said videophone is a single integrated device that includes a general purpose computer and a telephone." It argues that the videophone was a new device, citing the action of the Patent Office action upon reexaminations as proof of the novelty of the device. The Patent Office allowed the claims because it found that the prior art that was the subject of the reexamination did not disclose the integrated device limitation. ***VIPC v. UCC***, 2014 WL 561731 (N.D. Ill.) ("***VIPC I***"). The Patent Office did not make any finding that the videophone represented an inventive concept. Reexaminations under 35 U.S.C. § 101 focus on prior art and do not consider § 101 issues, the resolution of which have changed since the '092 patent filing date.

The videophone has been construed by the language in the claims to include "a video screen, a memory chip for storing said transaction information and an

14

interface chip for interfacing with said data center" and that it is a "single integrated device that includes a general purpose computer and a telephone." The Patent's Specification referring as it does to "any device" which may be developed in the future, does not support that the videophone is a new or improved invention. It appears rather that the inventors intended to cover any device considered to be a videophone or that would be considered to be a videophone in the future. FIG. 4 of the '092 patent is as follows:



The detailed description of the videophone, as claimed in the user station, is as follows:

16

> Each user station **100**, as depicted in FIG. **4**, includes a videophone **120** having a video screen **122**, a handset **124**, pushbuttons **126** for dialing, a memory chip **128**, and a telephone line. Connected to the videophone **120** is a printer **140** for printing hard copies of transactions or receipts for products and services, a screen printer **160** for transactions on video screen **122**, and an encryption encoder microchip **180** and a decoder **182** for message privacy and transaction authentication.

Col. 4:19-27.

The Patent does not explain how to construct a videophone. The Specification does not disclose an improved videophone. It does not provide an enabling description or technical data that would allow a person of ordinary skill in the art to construct a videophone.

VIPC also cites the machine-or-transformation test in support of its argument that the claims pass step-two. The Federal Circuit has stated that post-*Mayo/Alice* this test is no longer sufficient alone to render a claim patent-eligible. ***Mercedes-Benz***, 635 F. App'x at 919; ***Hotels.com.***, 773 F.3d at 1256.

The 1995 priority date of the '092 Patent is urged by VIPC as a factor to be considered in evaluating the videophone. VIPC states that cell phones were unknown at that time. A similar argument was rejected in ***Amazon.com.***, 2016 WL 5335502 at *3-4. The court rejected the contention that the claim included a technological innovation because, as of the priority date, wireless streaming of

17

media was not routine conventional or well-known. While noting that other broadcast media providing similar function were already well-known at the time, the court also rejected the patent holder's contentions because the specification failed to describe a specific means for performing the relevant function. Similarly, in this case the Patent describes the claimed videophone in broad terms of functionality that rely on prior art with no description of how to implement functionality.

The '092 patent, when considered with all of its components, lacks inventive concept and fails the second step of the *Alice/Mayo* framework.

The claimed videophone can consist of generic computer components and a telephone that perform ordinary functions in a conventional manner. The '092 patent presents a risk of broad preemption of the abstract idea of conducting transactions over a network.

IT IS THEREFORE ORDERED AS FOLLOWS:

(1) Defendant's motion to strike and dismiss [156] is denied as moot. Defendant's motion for judgment on the pleadings [187] is granted.

(2) The court concludes U.S. Patent No. 5,724,092 does not claim patentable subject matter under 35 U.S.C. § 101 and dismisses plaintiff Visual Interactive

Phone Concepts, Inc.'s claims of infringement against defendant United States Cellular Corporation with prejudice.

(3) The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff dismissing plaintiff's cause of action with prejudice.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED:  NOVEMBER  15, 2016